UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM L.,[1] Plaintiff, v. FRANK J. BISIGNANO, Commissioner of Social Security Administration, Defendant. | Case No. 3:25-cv-30121-CLM |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(Docket Nos. 12 & 27)

MORGAN, U.S.M.J.

William L. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner denying his application for Social Security Disability Insurance benefits ("SSDI" or "disability benefits") and Supplemental Security Income ("SSI"). Plaintiff contends that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and that the ALJ erred as a matter of law, and, as a result, seeks vacatur and remand. Before the court are Plaintiff's motion for judgment on the pleadings (Dkt. No. 12)

[1] In the interest of privacy, this Memorandum and Order uses only the first name and first initial of the last name of the non-governmental party in this case. *See S.R. v. Soc. Sec. Admin.*, Civil No. 24-12335-LTS, 2025 WL 815122, at *2 (D. Mass. Mar. 6, 2025) ("Use of [the] initial[ ] protects the claimant's privacy while still ensuring public access to the [c]ourt's reasoning and decision.").

and the Commissioner's motion for an order affirming the decision (Dkt. No. 27). The parties have consented to this court's jurisdiction (Dkt. No. 10). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, the court DENIES the Commissioner's motion to affirm (Dkt. No. 27), GRANTS Plaintiff's motion for judgment on the pleadings (Dkt. No. 12), vacates the ALJ's decision, and remands the matter for further administrative proceedings consistent with this opinion.

## I. RELEVANT FACTUAL BACKGROUND

Plaintiff applied for both disability benefits and SSI, alleging disability beginning on July 15, 2020 (A.R. 27, 182-96).[2] His claims were denied upon initial review on September 30, 2022, and after reconsideration on July 14, 2023 (A.R. 113, 119). On August 25, 2023, Plaintiff requested a hearing before an ALJ (A.R. 122-23), which occurred on March 19, 2024 (A.R. 54-86). The ALJ issued a decision, again denying Plaintiff's applications for benefits, on April 23, 2024 (A.R. 27-45). Plaintiff requested Appeals Council review of the ALJ decision on May 14, 2024, which was rejected on February 28, 2025 (A.R. 11-16), rendering the ALJ decision final for purposes of judicial review under 42 U.S.C. § 405(g).

### A. Medical Records

Plaintiff was diagnosed with colon cancer in April 2021 (A.R. 317).[3] Following his diagnosis, Plaintiff underwent surgeries to remove the cancer and reconstruct

---

2 All citations to "A.R." refer to the administrative record, which appears at docket number eleven of this case. The page numbers were assigned by the Social Security Administration and appear in the lower righthand corner of each page.

3 In addition to Plaintiff's physical impairments related to his history of colon cancer, the ALJ also found Plaintiff was severely impaired by anxiety disorder and

the affected areas in April and June 2021, then began chemotherapy, which concluded in December 2021 (A.R. 31, 427-31, 605). Following the first cycle of treatment, Plaintiff reported some cold sensitivity and increased fatigue, but no persistent neuropathy (A.R. 581). At follow-up oncology appointments in February and March 2022, however, Plaintiff began reporting numbness and tingling in his fingers and toes (A.R. 605-06, 624-26). This paresthesia was noted to be "likely due to the lingering effects of chemotherapy" (A.R. 606). He was diagnosed with grade 2 peripheral neuropathy on or around March 2, 2022, for which he was prescribed gabapentin (A.R. 625). Records from the subsequent months note that he had "grade 1 peripheral neuropathy of the hands and grade 2 of the feet" (A.R. 647, 794).

At the March 2, 2022, appointment, Plaintiff reported that this peripheral neuropathy caused "ongoing issues with persistent numbness of his fingers and feet which make it hard for him to keep his balance," and that he felt wobbly when walking, "like his feet and ankles are swollen" (A.R. 621, 625). He noted that he had "been staying home and not going outside" and that he could not work "since he can not [sic] stand on his feet because of the pain or use his hands because of the numbness, tingling" (A.R. 625). However, he was noted to have a steady gait at the time (*id.*).

depressive disorder (A.R. 29). Because Plaintiff only challenges the ALJ's evaluation of his physical impairments—namely, the peripheral neuropathy symptoms caused by his colon cancer chemotherapy—and the ALJ's physical residual functional capacity determination, the court limits its discussion of the evidence accordingly.

A few months later, at a June 5, 2022, oncology follow-up, Plaintiff reported continued "neuropathy in his hands and feet which has been stable but has not improved" (A.R. 643). Specifically, he noted "a feeling of tightness in his feet" and some clumsiness in performing fine motor activities (*id.*). He stopped taking gabapentin, as he did not find it helpful (*id.*).

At subsequent follow-up appointments on September 6, 2022, December 8, 2022, and June 22, 2023, Plaintiff continued to report limitations posed by the peripheral neuropathy in his hands and feet (A.R. 647, 661, 1121).

At a June 27, 2023, disability benefit psychological examination, Plaintiff reported feeling that he could not work as a machinist like he did previously, because he does not drive and could not walk to work ("he cannot walk more than about a half mile") and could not stand at a machine (A.R. 1102). He noted "a lot of tingling feelings in [his] feet in particular" (A.R. 1104).

Plaintiff continued reporting his struggles with neuropathy through at least July 2023 (A.R. 1132, 1319).

B. State Agency Consultants

On initial review of Plaintiff's application for disability benefits, Malin Weeratne, M.D., reviewed Plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment on September 26, 2022 (A.R. 92-93). Dr. Weeratne acknowledged Plaintiff's history of colon cancer, chemotherapy, and subsequent peripheral neuropathy (A.R. 93). In assessing Plaintiff's physical RFC, Dr. Weeratne opined that Plaintiff has some exertional limits: he could

occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; stand and walk four hours in an eight-hour day; sit six hours in an eight-hour day; and climb, balance, stoop, kneel, crouch, and crawl occasionally (*id.*). Dr. Weeratne found that Plaintiff did not have any manipulative, visual, or communicative limitations, but should avoid concentrated exposure to extreme cold and vibration, and avoid even moderate exposure to hazards such as machinery and heights (*id.*).

On reevaluation, Malavalli Gopal, M.D., reviewed Plaintiff's medical records and provided her opinion as to Plaintiff's physical RFC on March 22, 2023, and similarly concluded that Plaintiff could perform a range of light work with the same exertional and environmental limitations noted by Dr. Weeratne (A.R. 102-04). Dr. Gopal noted that she had reviewed updated medical evidence received in the time since Dr. Weeratne's assessment, and that these records show "no evidence of [cancer] recurrence," but that Plaintiff continued to have "residual symptoms of peripheral neuropathy" (A.R. 103).

C. Function Reports

Both Plaintiff and his partner completed SSA function reports detailing Plaintiff's limitations. In a report dated April 1, 2022, Plaintiff reported, *inter alia*, that he "can't stand for [eight hours], . . . can't walk to work[,] . . . [and has] swollen [and] tingly feet that causes [sic] balance issues" (A.R. 239). He noted "sensations in feet," "feet [and] balance issues" while standing, and being able to walk only half a mile (A.R. 244-45). On April 2, 2022, his partner reported, *inter alia*, that Plaintiff "stumbles when he walks" and that "[h]is feet are extremely swollen [and] tingle"

(A.R. 252). In another report completed on January 12, 2023, his partner reported that Plaintiff's "balance makes him stumble [and] fall" and "[h]e does stumble alot [sic] [and] it concerns me when he is out alone" (A.R. 265, 268).

D. Administrative Hearing

1. *Plaintiff's Testimony*

At the March 19, 2024, hearing, Plaintiff testified regarding his claimed conditions of colon cancer, anxiety disorder, bladder disorder, and acid reflux (A.R. 68-74, 199), including the neuropathy and other limitations he attributed to chemotherapy (A.R. 68, 70-71) ("I also ended up with pretty severe neuropathy from the chemo, which makes my fingertips and the bottoms of my feet feel numb and I have problems with balance."). With respect to the neuropathy, Plaintiff reported numbness in his hands and feet but stated that he did not "have any problems using [his] arms or [his] hands" (A.R. 71). He clarified that most of his balance limitations stem from the neuropathy in his feet:

> [D]ue to the sensation in my feet, I have very, very bad balance issues. I don't feel like I am touching the floor with my feet and so, I often make missteps or like I am putting my foot either not down to the floor or like I am putting my foot through the floor, because I can't quite feel it well enough (*id.*).

Plaintiff reported falling and tripping previously due to the neuropathy in his feet, and that he had "broken a couple of toes a couple of times" (*id.*). Plaintiff stated that a neuropathy specialist told him that his balance issues, as well as his fatigue, were a "classic case of the side effects of the chemo" he received, and "if it doesn't go away [he] will probably live with it the rest of [his] life" (A.R. 72-73). Plaintiff further

testified that the neuropathy has not gotten better, and "it feels like [he is] wearing a slipper all the time" (A.R. 76).

2. *Vocational Expert's Testimony*

The ALJ first asked Robert Paterwic, the vocational expert, to classify Plaintiff's past work experience under the Dictionary of Occupational Titles ("DOT"). Based on the documents and testimony provided by Plaintiff, the vocational expert opined that Plaintiff worked previously as a Computer Numerical Control ("CNC") machinist, which the vocational expert categorized as a numerical control machine operator (DOT 605.362-010), with a DOT specific vocational preparation rating of 5, which is considered "skilled work," and an exertional level of medium; metal processor, which the vocational expert categorized as a cut off saw operator (DOT 607.682-010), with a DOT specific vocational preparation rating of 4, which is considered "semiskilled work," and an exertional level of medium; robotics worker, which the vocational expert categorized as a forger operator (DOT 612.682-014), with a DOT specific vocational preparation of 4, which is considered "semiskilled work," and an exertional level of medium; and (d) torch cutter, which the vocational expert categorized as a Dremel cutter (DOT 816.464 010), with a DOT specific vocational preparation rating of 5, which is considered "skilled work," and an exertional level of heavy (A.R. 78-79).

The ALJ next asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work experience, who could lift and carry up to ten pounds, stand and walk for four hours in an eight-hour day, sit for

six hours in an eight-hour day, engage in only occasional postural activities (including climbing, stooping, kneeling, crouching, and crawling) and occasional social interactions (with the public, coworkers, and supervisors), face occasional exposure to concentrations of extreme cold and vibration, and adapt to minor changes in the work routine on simple tasks, and should avoid work with hazardous machines, work in unprotected heights, driving commercial vehicles, and team tasks with coworkers (A.R. 81). The vocational expert opined that such a hypothetical individual would be limited to sedentary work, and thus unable to perform any of Plaintiff's past relevant work at the required medium or heavy exertional level (*id.*). He further opined that such an individual could not perform jobs requiring even a light level of exertion (A.R. 84-85).

The vocational expert opined that such an individual, limited to sedentary work, with the same work history as Plaintiff, could perform work as a touch up screener (DOT 726.684-010), with a DOT specific vocational preparation rating of 2, which is considered "unskilled work," and an exertional level of sedentary, for which there are an estimated 6,000 to 6,100 positions in the national economy; a bench hand (DOT 700.687-062), with a DOT specific vocational preparation of 2, which is considered "unskilled work," and an exertional level of sedentary, for which there are an estimated 8,000 to 8,100 positions in the national economy; and an addresser (DOT 209.587-010), with a DOT specific vocational preparation of 2, which is considered "unskilled work," and an exertional level of sedentary, for which there are an estimated 2,700 to 2,800 positions in the national economy (A.R. 82-83).

## II. THE ALJ'S DECISION

On April 23, 2024, the ALJ issued a decision denying Plaintiff's claim (A.R. 27-45). The ALJ conducted the requisite five-step sequential analysis set forth in the regulations promulgated by the Social Security Administration ("SSA"). *See* 20 C.F.R. § 404.1520(a)(i)-(v); 20 C.F.R. § 416.920(a)(4)(i)-(v). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 15, 2020, through the date of the decision (A.R. 29). At the second step, she found that Plaintiff's severe impairments included "history of colon cancer with surgery and ostomy bag placement, peripheral neuropathy, anxiety disorder, and depressive disorder" (*id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (A.R. 36-37).

Before considering step four, the ALJ found that, for the entire period at issue, Plaintiff had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he [could] lift and carry up to 10 pounds"; "stand or walk for 4 hours in an 8-hour workday"; "sit for 6 hours in an 8-hour workday"; "push and pull to the same extent as [he could] lift and carry"; "occasionally climb ramps, stairs, ladders, and scaffolds"; "occasionally stoop, kneel, crouch, and crawl"; "occasionally be exposed to concentrations of extreme cold and vibration"; "occasionally interact with the public[,] . . . coworkers and supervisors"; and "adapt to minor changes in the work routine on simple tasks" (A.R. 38). The ALJ further found that Plaintiff "[s]hould not work with hazardous machines with

external moving mechanical parts, work in unprotected heights, or drive commercial motor vehicles," and "[c]annot have team tasks with coworkers" (*id.*). Notably, the ALJ did not include a balance limitation.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a numerical control machine operator (DOT 609.362-010), metal processor (DOT 607.682-010), robotic forger (DOT 612.682-014), or thermal cutter (DOT 816.464-010), all of which required the performance of work-related activities precluded by Plaintiff's RFC (A.R. 27).

Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs found in significant numbers in the national economy and, therefore, Plaintiff was not disabled (A.R. 44). Specifically, the ALJ cited the jobs proposed by the vocational expert: "touch up screener (DOT 726.684-110; 6,000 to 6,100 positions available nationally), bench hand (DOT 700.687-062; 8,000 to 8,100 positions available nationally), and addresser (DOT 209.587-010; 2,700 to 2,800 positions available nationally)" (A.R. 45).

Plaintiff objects. He contends that the ALJ failed to properly evaluate the opinion evidence and that the ALJ's conclusion at step five of the sequential analysis is not supported by substantial evidence.

## III. STANDARD OF REVIEW

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing.

*See* 42 U.S.C. § 405(g). Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by substantial evidence and whether the correct legal standard was used.'" *Coskery v. Berryhill,* 892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001)). The court reviews questions of law *de novo*, *id.*, but "the ALJ's findings [of fact] shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See Applebee*, 744 F. App'x at 6. That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

## IV. ANALYSIS

Plaintiff contends that the ALJ failed to properly evaluate the opinion evidence and that the ALJ's conclusion at step five of the sequential analysis is not supported by substantial evidence. The court addresses each of these arguments in turn.

### A. The ALJ Failed to Properly Evaluate the Opinion Evidence

Plaintiff first argues that the ALJ erred by failing to explain why she did not adopt Dr. Weeratne's and Dr. Gopal's opinions about Plaintiff's limited ability to balance (Dkt. No. 13, at 9-13). Specifically, both Dr. Weeratne and Dr. Gopal opined that Plaintiff can only "occasionally balance" (A.R. 92, 103), but the ALJ did not find a balance limitation and did not explain her reason for not adopting this portion of their opinions, even as she found the opinions "generally persuasive" and used them "as the foundation of the residual functional capacity in terms of the stand/walk limitation, occasional postural, and environmental limitations" (A.R. 41). The ALJ generally found that there was insufficient correlation between Plaintiff's subjective complaints and the objective evidence of his conditions, including the complications stemming from his chemotherapy (A.R. 38). Plaintiff argues that this error was not harmless because the vocational expert's hearing testimony was based upon a hypothetical individual without a balancing limitation (Dkt. No. 13, at 13-14).

In response, the Commissioner contends that the ALJ did adequately explain her reasoning for not including a general balancing limitation and addressed Plaintiff's balance issues by finding he was limited to standing or walking four

hours in an eight-hour day (Dkt. No. 27-1, at 7-8). The ALJ noted Plaintiff's self-reported balance issues (A.R. 31, 39), but also noted that there was a lack of objective medical evidence supporting his reports (A.R. 31 ("ambulating with a steady gait"), 33 ("ambulated with a steady gait"), 39 ("no evidence balance or gait disturbance noted"), 40 ("lack of evidence of balance or gait disturbances documented in the record"), 43 ("balance issues . . . not observed in examinations")). The Commissioner argues that these notations adequately addressed why the ALJ did not adopt the balance limitation, and that the alleged error is harmless anyway, because the ALJ still assessed a four-hour standing and walking limitation. The court does not agree.

In determining a claimant's RFC, an ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Harrison v. Saul*, Civil No. 20-10295-LTS, 2021 WL 1153028, at *5 (D. Mass. Mar. 16, 2021) (quoting SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). While an ALJ may "accept[] certain limitations while rejecting others . . . , he [i]s required to 'explain why he reject[s] some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment.'" *Watkins v. Berryhill*, No. 3:16-cv-30117-KAR, 2017 WL 4365158, at *11 (D. Mass. Sept. 29, 2017) (quoting *Warzeka v. Colvin*, No. 15-1118-SAC, 2016 WL 3902751, at *4 (D. Kan. July 19, 2016)) (citing SSR 96-8p, 1996 WL 374184, at *7)). "The ALJ's discussion . . . must explain why evidence is rejected with sufficient

detail for a reviewing court to determine whether the evidence was rejected for the right reasons." *Cinelli vs. O'Malley*, No. 24-cv-10613-DJC, 2025 WL 641402, at *9 (D. Mass. Feb. 27, 2025) (citing *Leggett v. Berryhill*, CIVIL ACTION NO. 16-11027-JGD, 2018 WL 700786, at *7 (D. Mass. Feb. 2, 2018); *Watkins*, 2017 WL 4365158, at *10; *Dumont v. Berryhill*, No. 16-cv-11502-JGD, 2017 WL 6559758, at *8 (D. Mass. Dec. 22, 2017)).

Here, the ALJ explicitly found the opinions of Dr. Weeratne and Dr. Gopal "generally persuasive" and used their opinions "as the foundation of the residual functional capacity in terms of the stand/walk limitation, occasional postural, and environmental limitations" (A.R. 41). She did not explain, however, why she adopted Dr. Weeratne's and Dr. Gopal's opinions on all of Plaintiff's other postural limitations (climbing, stooping, kneeling, crouching, and crawling), except the balancing limitation. Although she noted a lack of objective medical evidence in support of Plaintiff's subjective complaints (A.R. 38), the ALJ "erred on the side of caution in restricting the claimant to sedentary exertion versus the light exertional limitation found by both evaluators" (A.R. 41). The ALJ explained that she was relying on Plaintiff's reports of "difficulty picking up and carrying," and found it "more reasonable to limit the weight necessary to lift and carry to avoid strain on the abdomen and abdominal pain or injury from possible loss of balance or dropping something if neuropathy flares" (A.R. 42). It is unclear why she "erred on the side of caution" in assessing Plaintiff's ability to lift weight, specifically mentioning his balance issue, without assessing a balance limitation. The Commissioner argues

that the ALJ's "narrative discussion" suffices to explain why she did not adopt the balance portion Dr. Weeratne's and Dr. Gopal's opinions (Dkt. No. 27-1, at 7-8), but the court is not persuaded this constitutes "sufficient detail" under *Cinelli*.

Moreover, while an ALJ's omission of limitations does not amount to reversible error "when the jobs recommended by the [vocational expert] and relied upon by the ALJ do not involve any conditions related to the omitted limitations," it is unclear here whether the jobs of touch up screener, bench hand, and addresser involve balance. *Cinelli*, 2025 WL 641402, at *9 (citing *Lynch v. Berryhill*, 368 F. Supp. 3d 292, 297 (D. Mass. 2019); *Hoag v. Saul*, 531 F. Supp. 3d 462, 466 (D. Mass. 2021)). It cannot be said that this error was harmless, as a balance limitation may have altered the vocational expert's testimony as to jobs available to Plaintiff. *See Favata vs. Kijakazi,* No. 1:22-cv-00552-PB, 2023 WL 8434457, at *5 (D.N.H. Dec. 5, 2023) ("ALJ's failure to explain why she did not fully adopt [RFC] opinion was not inconsequential" where "none of the jobs that the [vocational expert] identified would qualify"). The Social Security Administration recognizes the significance of a balancing limitation, explaining that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupational base," making it "important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base." SSR 96-9P, 1996 WL 374185, at *7. Remand is thus necessary for reconsideration of the RFC in view of Dr. Weeratne's and Dr. Gopal's opinions regarding Plaintiff's balance, to explain the discrepancy between the opinions and

the RFC. *Leggett*, 2018 WL 700786, at *7 ("[T]his court is not entitled to speculate as to the reasons for the ALJ's decision not to incorporate that limitation. His failure to offer an explanation constitutes error warranting remand."); *Crosby v. Heckler*, 638 F. Supp. 383, 385–86 (D. Mass. 1985) ("Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation.").

B. The ALJ's Finding that Other Work Exists in "Significant Numbers" in the National Economy is Not Supported by Substantial Evidence

Plaintiff next argues that the ALJ's conclusion at step five of the sequential analysis is not supported by substantial evidence. First, he argues that one of the jobs that the vocational expert suggested, "addresser," is obsolete according to SSA Emergency Message EM-24027 REV, and should not have been included in the vocational expert's estimation of available jobs (Dkt. No. 13, at 16-17). Second, he argues that the three jobs that the vocational expert suggested, even including the purportedly-obsolete job of "addresser," only amount to 16,700 to 17,000 jobs in the national economy, which he contends is not sufficient to be found "in significant numbers" (*id.*, at 17-19). Plaintiff argues that such a low availability of jobs does not support the ALJ's finding that he can make an adjustment to other work, and that this alleged error was not harmless because it resulted in the ALJ's finding that Plaintiff can find work and is thus not disabled (Dkt. No. 13, at 18-19).

The Commissioner, for his part, contends that the ALJ properly included "addresser" as one of the jobs Plaintiff could perform, because EM-24027 REV

identifies it "as one of the jobs that cannot be relied on without additional evidence from a vocational expert about the manner in which the job is currently performed," and the vocational expert testified, in part, that the job is currently performed, albeit "differently in today's economy" (Dkt. No. 27-1, at 8). Moreover, the Commissioner contends, even if that job were excluded, the remaining two jobs suggested by the vocational expert are still of sufficient number in the national economy to satisfy the step five burden (*id.*, at 9).

Released in January 2025, in response to judicial questions about "whether some occupations continue to be performed in the manner in which they are described in the DOT," EM-24027 REV provides that an ALJ may not cite to several jobs, including "addresser," "without additional evidence from a [vocational expert or specialist] supporting the [ALJ]'s conclusion that, as the occupation is currently performed[,] [i]ts requirements are consistent with the individual's RFC, and [i]t exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." EM-24027 REV, https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last visited September 22, 2026). Here, the vocational expert explicitly testified that "[t]he addresser job is still performed," in large part consistently with the DOT description (A.R. 84). "But sometimes there is a computer label that would be used, as opposed to addressing things by hand. And so, that has changed slightly, but the job essentially is the same," and does not require "different physical or mental demands than are described in the DOT [i.e., an exertional level of sedentary]" (*id.*). The

court finds that this testimony, on which the ALJ explicitly based her RFC determination (A.R. 45), satisfies the EM-24027 REV requirement of "additional evidence" from a vocational expert that, "as the occupation is currently performed[,] [i]ts requirements are consistent with" Plaintiff's limitation to sedentary work.[4]

The court next turns to whether the addresser job "exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." EM-24027 REV. Plaintiff argues that 16,700 to 17,000 jobs (14,000 to 14,200, excluding the "addresser" job) is too few to be considered a "significant" number for purposes of finding alternative work in the national economy (Dkt. No. 13, at 17-19). Plaintiff points to cases that have found 75,000 to 110,250 jobs to be a significant number in the national economy and 10,100 jobs to be too few (Dkt. No. 13, at 17-18) (citing *Ortiz v. Comm'r of Soc. Sec.*, 81 F. Supp. 3d 118, 128 (D. Mass. 2015) (finding 80,000 jobs sufficient); *Brun v. Barnhart*, 126 F. App'x 495, 2005 WL 879587, at *1 (1st Cir. Apr. 18, 2005) (affirming a lower court's finding of 150,000 jobs to be a significant number) (citing to *Jones v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (finding 75,000 jobs sufficient)); *Gurgone v. Kijakazi*, No. 4:18-cv-40133-TSH, 2022 WL 17652477, at *12 (D. Mass. Sept. 1, 2022) (finding 110,250 jobs sufficient); *Lambert v. US Soc. Sec. Admin., Acting Comm'r*, No. 17-cv-341-PB, 2018 WL 4215015, at *7 (D.N.H. Sept. 5, 2018) (finding 86,000 jobs

---

[4] Plaintiff cites to several decisions issued prior to EM-24027 REV to stand for the proposition that the job of "addresser" has been found obsolete. The court need not reach the question of whether the occupation is in fact obsolete, however, because the vocational expert testified that the occupation is still performed. That testimony is sufficient under EM-24027 REV.

sufficient); *Karissa B. v. O'Malley*, 733 F. Supp. 3d 57, 59-60 (D.R.I. 2024) (finding 10,100 jobs insufficient)).

The Commissioner, on the other hand, proffers cases that have found as few as 10,000 to 12,300 jobs to be a "significant" number in the national economy (Dkt. No. 27-1, at 9) (citing *Brownell v. Berryhill*, Civil Action No. 17-11462-FDS, 2018 WL 3150222, at *14 (D. Mass. June 27, 2018) (finding approximately 12,000 jobs sufficient); *Vining v. Astrue*, 720 F. Supp. 2d 126, 137 (D. Me. 2010) ("[N]umbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held 'significant.'") (internal citations omitted); *Dereck M. B. v. Berryhill*, C.A. No. 17-372JJM, 2018 WL 4941786, at *8 (D.R.I. Oct. 12, 2018) (finding 31,200 to 35,000 jobs "more than what is considered a 'significant number in the national economy'") (internal citations omitted).

The court agrees with Plaintiff. It is the Commissioner's burden at step five of the sequential analysis to "com[e] forward with evidence of specific jobs in the national economy that the applicant can still perform." *Seavey*, 276 F.3d at 5. The governing regulations provide that, if the claimant cannot perform past relevant work, other work the claimant can adjust to "must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. §§ 404.1560, 416.960. Yet here, "[t]he Commissioner has cited no evidence—let alone the required substantial evidence—to support his finding that [16,700-17,000] jobs is significant," particularly where "he cites no evidence concerning the number of [addresser, touch up screener, or bench hand]

jobs 'in the region where [Plaintiff] live[s] or in several regions in the country.'" *Karissa B.*, 733 F. Supp. 3d at 59 (quoting 20 C.F.R. § 404.1560).

The court finds this case distinguishable from *Brownell*, on which the Commissioner primarily relies. In *Brownell*, the ALJ articulated his reasons for finding the vocational expert's other work numbers significant, including the vocational expert's 20+ years of experience, that she provided a rationale for her methodology, and that she provided proof that the jobs she cited continued to exist in the national economy. *Brownell*, 2018 WL 3150222, at *10, 13. Here, the ALJ gave no reasons for finding the vocational expert's other work numbers to be available in "significant" number. The court in *Brownell* noted that the plaintiff's "strongest arguments [we]re that the ALJ should not have relied on [the vocational expert's] numbers because they were national numbers that did not account for local variations," and characterized the issue as a "close question." *Id.* at *13. Given the differences between the instant ALJ decision and that in *Brownell*, the close question goes the other way.

Accordingly, Plaintiff is entitled to remand on his second claim of error as well. On remand, the ALJ must cite substantial evidence to support a step five finding that significant numbers of other work identified by the vocational exert exist in the region where Plaintiff lives or in several regions of the country.

## V. CONCLUSION

For the foregoing reasons, the court DENIES the Commissioner's motion to affirm (Dkt. No. 27), GRANTS Plaintiff's motion for judgment on the pleadings

(Dkt. No. 12), vacates the ALJ's decision, and remands the matter for further administrative proceedings consistent with this opinion.

Date: September 22, 2026

/s/ Christopher L. Morgan_____
CHRISTOPHER L. MORGAN
U.S. MAGISTRATE JUDGE